CARL CHRISTIAN, APPELLANT, IMPLEADED WITH PAUL LEIF
ET AL., APPELLEES, V. PAUL C. GEIS ET AL., APPELLEES.

225 N. W. 2d 868

Filed February 13, 1975. No. 39570.

Crosby, Guenzel, Davis, Kessner and Kuester, for appellant.

Ginsburg, Rosenberg, Ginsburg & Krivosha and Ray L. Svehla, for appellees Geis et al.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BOSLAUGH, J.

This was an action to enjoin the members of the board of education of School District No. 67-R in Seward County, Nebraska, from proceeding to acquire a site selected by the board for the construction of a school building for the district. The plaintiffs are residents, electors, and property owners within the district. The action was brought on behalf of all electors and taxpayers of the district.

The trial court found generally for the defendants

and dismissed the action. The plaintiff Christian has appealed.

The school district, which is also known as the Centennial School District, is a Class III district. Its territory includes the communities of Utica, Waco, and Beaver Crossing. It operates grade schools in Waco and Beaver Crossing and a junior-senior high school in Utica.

In 1971 the district submitted a bond issue to the electorate for the construction of a junior-senior high school building to be located upon a tract of land at the southwest edge of Utica, described as the "Utica site." This bond issue was defeated.

In 1972 the district submitted a bond issue to the electorate for the construction of a K-12 facility, all grades from kindergarten through grade 12, upon a tract of land located 1 mile south of the Utica site and described as the "Gillan tract." The proposition submitted to the voters did not include a site designation, but the site had been selected at a meeting of the board in September 1972, and the preelection publicity clearly indicated the building would be constructed upon the Gillan tract if the bond issue passed.

The proposal submitted at the 1972 election received a favorable vote and in January 1973, the district commenced negotiations to acquire the Gillan site. A survey of the land was made and submitted to the architect employed by the board. After receiving the survey the architect recommended against use of the Gillan tract because of drainage problems. The Gillan tract was level ground with gradients so small that it was considered to be "table top flat." The architect explained that it would be possible to grade up at the building site so that water would drain away from the building, but there would be no practical way to provide drainage for the parking areas, drives, and athletic fields on the grounds. The architect predicted there would be months when the

yards and fields at the Gillan site would be unusable for anything.

After receiving the architect's recommendation the board voted to not build the new building on the Gillan tract and to evaluate new sites for the building. A newsletter was sent to the patrons of the district reporting the action of the board and requesting an indication of preference for alternate sites. The returns from this inquiry showed a majority of those responding favored the Utica site which had been considered at the time of the 1971 proposal.

On February 28, 1973, the board selected the Utica site as the location for the new building and commenced negotiations to acquire the property. This action was commenced on July 26, 1973. The evidence indicates the school district has not acquired any site for construction of the new building.

The selection of a site for a new school building in a Class III school district is an administrative determination to be made by the board of education of the district. § 79-801, R. R. S. 1943; Gaddis v. School District, 92 Neb. 701, 139 N. W. 280. The plaintiff does not dispute this proposition of law but contends that the representations made by the board concerning the location of the new school building which were made prior to the election created an estoppel which prevented the board from using the proceeds of the bond issue to build a schoolhouse on any site other than the Gillan tract.

The plaintiff relies upon May v. City of Kearney, 145 Neb. 475, 17 N. W. 2d 448. The May case involved an election at which the question of acquiring an electric power plant and distribution system was submitted. Prior to the election the officials of the city represented the purchase of the property would be financed by the sale of *revenue* bonds. At a subsequent election a proposal to issue revenue bonds was defeated. This court held the city was estopped from issuing *general obligation* bonds to acquire the property.

The limitations upon the May case have been recognized in many subsequent cases. Ordinarily, the doctrine of equitable estoppel cannot be invoked against a municipal corporation. Vakoc Constr. Co. v. City of Wayne, 191 Neb. 45, 213 N. W. 2d 721. Exceptions are made only where right and justice so demand. The doctrine is to be applied with caution and only in exceptional cases under circumstances clearly demanding its application to prevent manifest injustice.

The doctrine of estoppel is based upon grounds of public policy and good faith and is interposed to prevent injustice and inequitable consequences. Koop v. City of Omaha, 173 Neb. 633, 114 N. W. 2d 380. Ordinarily, there must be a reliance in good faith upon statements or conduct of the party to be estopped and a change of position by the party claiming the estoppel to his injury, detriment, or prejudice. Tighe v. Security Nat. Life Ins. Co., 191 Neb. 271, 214 N. W. 2d 622.

There is an absence of evidence in this case of misrepresentation or inequitable conduct on the part of the defendants and no showing of injury, detriment, or prejudice to the plaintiffs. The evidence establishes the district intended to build the new school building upon the Gillan tract until it received the recommendation from the architect that a new site should be found. The board then solicited advice from the residents of the district as to their preference for alternate sites. The site eventually chosen is within 1 mile of the Gillan tract and on the same highway. There is no evidence to show the plaintiffs were injured in any way by the selection of the Utica site as the location for the new building.

The plaintiff argues the Utica site was rejected by the voters in the 1971 election. This argument overlooks the fact the 1971 proposal was to build a junior-senior high school while the 1972 proposal was to build a K-12 facility for approximately the same amount of money with a smaller gymnasium and no auditorium. The site may have had some influence with some of the vot-

ers at the 1971 election, but there is no basis upon which it can be said it was the controlling consideration. The difference in the two proposals prevents such a conclusion from being drawn.

The judgment of the District Court was correct and it is affirmed.

AFFIRMED.