PROTECTIVE FIRE AND CASUALTY COMPANY, A CORPORATION, APPELLANT, v. GLENDA CORNELIUS ET AL., APPELLEES.

125 N. W. 2d 179

Filed December 13, 1963. No. 35486.

Ivan A. Blevins, for appellant.

Perry & Perry, Wagener & Marx, Healey & Healey, and John McArthur, for appellees.

Wright, Simmons & Hancock, for amicus curiae.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

This is an action under the Declaratory Judgments Act to determine the extent of liability on two automobile insurance policies alleged to cover the same auto-

mobile accident. The trial court found for the defendants and the plaintiff has appealed.

The evidence shows that on August 12, 1961, one Van Hoozer was an employee of Martin Swartzman, who was operating an establishment for the sale of used automobiles and automotive parts under the name of Marty's Auto Parts. At the close of business on the day in question, a Saturday, Van Hoozer indicated a desire to purchase a 1941 Chevrolet automobile from Martin Swartzman for the sum of $25. The terms of sale were agreeable with Swartzman. Because of the lateness of the hour no sale was completed. Van Hoozer requested permission, as he said, to try the car out over the weekend. Swartzman testified that permission was granted to Van Hoozer to take the automobile over the weekend for the purpose of working on it. A dealer's license plate was placed on the car so that Van Hoozer could take the car that evening.

Van Hoozer drove the automobile to the home of Glenda Cornelius, where he left it overnight. He returned the following morning, a Sunday, and tinkered with the car until about 11 a.m. At that time Van Hoozer and Glenda Cornelius went to the home of Van Hoozer's mother for the purpose of showing her the car, Van Hoozer doing the driving. When they left the mother's home Van Hoozer asked Glenda Cornelius if she would like to drive the car. She indicated a desire to do so and she proceeded to drive it back to her home. Van Hoozer occupied the front seat during the trip and gave directions as to the route to be taken, which directions Glenda followed. On the way she had an intersection accident with an automobile owned and operated by one Trenary, which gave rise to the present litigation.

The evidence showed that Van Hoozer and Glenda were engaged to be married. Glenda had become acquainted with Swartzman at his place of business and she was known to Swartzman as Van Hoozer's girl friend.

In the transaction leading up to the permission granted to Van Hoozer to take the car, the name of Glenda Cornelius was not mentioned and consequently no express permission was given by Swartzman for Glenda to drive the car.

The plaintiff, Protective Fire and Casualty Company, was the insurance carrier for Glenda Cornelius covering an automobile owned by her. The Empire Fire and Marine Insurance Company was the insurance carrier for Martin Swartzman, doing business as Marty's Auto Parts. The first question to be determined is whether or not liability exists on the part of Empire Fire and Marine Insurance Company under its contract of insurance with Swartzman.

The policy of Empire Fire and Marine Insurance Company defines the insured as follows: "With respect to the insurance under coverages A, B and D the unqualified word 'insured' includes the named insured and also includes (1) any partner, employee, director or stockholder thereof while acting within the scope of his duties as such, and any person or organization having a financial interest in the business of the named insured covered by this policy, and (2) any person while using an automobile covered by this policy, and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission."

It is provided by section 60-534, R. R. S. 1943, which we shall hereafter designate as the omnibus statute, in part as follows: "Such owner's policy of liability insurance: (1) Shall designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted; and (2) shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, main-

tenance or use of such motor vehicle or motor vehicles * * *."

It is the law of this state that applicable statutes which exist at the time of making a contract of insurance enter into and form a part of it as if they were expressly referred to and incorporated therein. This principle embraces alike those laws which affect its validity, construction, discharge, and enforcement. Reinsch v. Pacific Mutual Life Ins. Co., 140 Neb. 225, 299 N. W. 632. See, also, Moore v. Washington Nat. Ins. Co., 135 Neb. 29, 280 N. W. 221; Wildman v. Government Employees' Ins. Co., 48 Cal. 2d 31, 307 P. 2d 359.

The omnibus statute provides a broader coverage than is contained in the Empire Fire and Marine Insurance Company policy. This is demonstrated in that the statutory provision fixes liability on one "using" the automobile with the express or implied consent of the named insured while the insurance policy provides liability by one using the automobile of the named insured provided the "actual use" of the automobile is by the named insured or with his permission.

The evidence shows that Van Hoozer testified that the permission granted by Swartzman was to try out the car, while Swartzman said that the permission was to work on it. In either event, the permission was to use the car, which is all that is required by the omnibus statute.

The statute is remedial in nature and has for its purpose the protection of the public against damages resulting from accidents arising because of the negligent use of automobiles by irresponsible and noninsured permittees. The statute should be construed to accomplish the purpose and policy of the legislation. We must therefore reject the contention that the language of the omnibus statute means that the permission to use the car in a specified manner or for a specified purpose only bears upon the liability where permission to use the car is in fact given. Under this rule as stated in 5A Am.

Jur., Automobile Insurance, § 99, p. 99, a deviation from the permitted use is immaterial, the only essential being that permission be given for use in the first instance.

In Dickinson v. Maryland Casualty Co., 101 Conn. 369, 125 A. 866, 41 A. L. R. 500, the court, in construing an omnibus clause in an insurance policy extending coverage to any person while riding in or legally operating the automobile described in the policy, and to any person legally responsible for the operation thereof, provided such use or operation is with the permission of the named insured, said: "The insurer desired to obtain insurance and, for this object it extended in its policy the benefits of the policy to the guest riding in the insured's automobile, provided the guest was riding with the permission of the insured. If the insurer had intended by this proviso to restrict the permission to its specifically named objects, it would, in each case, be necessary to make inquiry into the purpose and extent of the permission, while by specific provision the insurer could readily have done this and avoided the inquiry. The result would have been a policy less acceptable to prospective insured. It would have invited in most cases an investigation as to whether the permission granted had been violated in a particular case or not. In place of a certain provision in the policy of definite meaning, it would have inserted a provision breeding uncertainty, inviting litigation, and making the defense of a departure from the permission an available and often used defense. This is exactly what the courts and legislature have frowned upon—uncertain and ambiguous provisions in contracts of insurance under which insurers seek an escape from the obligation of paying the insurance indemnity contracted for.

"The fact that the insurer in this case did not so restrict the term 'permission' is strong evidence that it did not by this provision intend this. To justify the strict construction claimed by the insurer, the terms of the

policy prepared by the defendant ought to specifically so provide. The construction claimed by the defendant would convert all cases of this character into a contest as to the exact words spoken when permission was secured, and to an attempt upon the trial to convert by refinement any use of the car into a departure sufficient to annul the permission granted. If the departure were from the place permitted, be it near or far, or from the purpose named, be it substantial or otherwise, the insured must fail in his recovery. The business of the insurance company was to sell its insurance under this policy. Indemnity for the guest or family of the assured riding in the car was a feature of the policy. What sort of an indemnity to them would it be if they were bound by the strict limitations of the permission of the insured? It would be necessary in advance of entering the car for them to ascertain these limitations and then to endeavor to see that the driver of the car enforced them. Is it likely that the insurer would insert such a provision leading to such consequences? And how could the insured ever be assured that he had secured the extension of the indemnity of this policy for his guest or family or the guest or family of him to whom the insured gave the permission, if any departure from that permission destroyed the indemnity?" See, also, Stovall v. New York Indemnity Co., 157 Tenn. 301, 8 S. W. 2d 473, 72 A. L. R. 1368; Annotation, 5 A. L. R. 2d, § 13, p. 629, and cases there collected.

The purpose of the omnibus clause is to fix the liability of additional insureds and to eliminate ambiguities and defenses with reference thereto as a matter of public policy. We conclude, therefore, that the omnibus clause imposes liability on the insurer for the negligence of any person using the insured's automobile with his permission.

The Empire Fire and Marine Insurance Company and Swartzman rely upon the former decisions of this court in support of a contrary view. We shall discuss the

principles involved in those cases. In State Farm Mut.
Automobile Ins. Co. v. Kersey, 171 Neb. 212, 106 N. W.
2d 31, the court held that the automobile was being used
at the time of the accident by a minor without permis-
sion, which would defeat a recovery under the provisions
of the omnibus statute. In Turpin v. Standard Reliance
Ins. Co., 169 Neb. 233, 99 N. W. 2d 26, the court im-
posed liability on the ground that general permission
to use the automobile by the permittee had been granted
by the owner. In Witthauer v. Employers Mutual Cas-
ualty Co., 149 Neb. 728, 32 N. W. 2d 413, the court denied
recovery under a policy provision limiting additional
insureds to persons using the insured car provided the
actual use of the automobile is by the named insured
or with his permission. The accident occurred on March
23, 1944, prior to the effective date of the omnibus stat-
ute on May 11, 1949. The case was correctly decided
under the law existing when the accident occurred, but
it is not authority in cases arising after the enactment
of the omnibus statute.

We point out that in cases which arise under provi-
sions limiting recovery to additional insureds using an
automobile covered by the policy provided the actual
use of the automobile is by the named insured with his
permission are generally construed to mean that the cov-
erage exists only when the automobile is being used
within the range of the specific permission granted. The
words "actual use" constitute a much greater limitation
of coverage than do the words "use" or "using," found
in the omnibus statute. See, Gulla v. Reynolds, 151 Ohio
St. 147, 85 N. E. 2d 116; Laroche v. Farm Bureau Mutual
Automobile Ins. Co., 335 Pa. 478, 7 A. 2d 361.

In the last-cited case the court said: "It is to be
noted that in the present policy the phraseology em-
ployed is 'provided * * * the actual use is with the per-
mission of the Named Insured.' Perhaps a better term
for what evidently was intended by the use of this ad-
jective would have been 'the particular use.' In Apple-

man on Automobile Liability Insurance, p. 110, the term 'actual use' is said to be designed to defeat the minority view that, if permission to use the car is given by the insured, the permission need not cover the specific purpose for which the car is being driven at the time of the accident. In the recent case of Haeuser v. Aetna Casualty & Surety Co., 185 So. (La. App.) 493, the phrase 'actual use' was so interpreted, and was held to relieve the company from liability where permission had been given for a certain purpose but the driver of the car was proceeding on a distinct errand of his own when the accident occurred."

While the language of the policy in the instant case used the term "actual use," the omnibus statute which supersedes the words "actual use" contained in the policy with the word "using" effectively changes the coverage of additional insureds in accordance with the legal meaning that the term implies. We must assume that it was the intention of the Legislature in enacting the omnibus statute to accomplish this result.

It is contended, however, that liability does not exist on the part of the Empire Fire and Marine Insurance Company, for the reason that Glenda Cornelius, and not Van Hoozer, was operating the car at the time of the accident. The terms "use" and "operation" are not interchangeable nor synonymous. They have separate meanings. Rose v. Gisi, 139 Neb. 593, 298 N. W. 333. In Woodrich Construction Co. v. Indemnity Ins. Co., 252 Minn. 86, 89 N. W. 2d 412, the court said: "The use of a motor vehicle does not require that the user, or the user's agent, be its actual operator. It is common knowledge that the use of a motor vehicle may be furnished by the owner to another with or without a driver. Many decisions have in effect recognized use as going beyond the narrow meaning of the direct mechanical operation performed by the driver and as encompassing the broader concept of employing or putting the vehicle into one's service by an act which assumes at any time—with the

consent of the owner or his agent—the supervisory control or guidance of its movements."

In the instant case Glenda Cornelius was operating the car at the time of the accident. The permittee, Van Hoozer, was riding in the car. Under such circumstances Van Hoozer was using the car within the meaning of the omnibus statute. Persellin v. State Automobile Ins. Assn., 75 N. D. 716, 32 N. W. 2d 644; American Employers' Ins. Co. v. Liberty Mut. Ins. Co., 93 N. H. 101, 36 A. 2d 284; Brown v. Kennedy, 141 Ohio St. 457, 48 N. E. 2d 857.

We conclude, under the foregoing authorities, that the Empire Fire and Marine Insurance Company is primarily liable for the damages sustained in the instant case. The employee, Van Hoozer, having permission to use the car and being a passenger in it at the time of the accident, even though the car was being operated by another, was using it within the meaning of the statute and was an additional insured under its terms.

A determination of the liability of plaintiff, Protective Fire and Casualty Company, for damages in the accident on its policy of insurance covering the automobile of Glenda Cornelius is also sought. The policy provided: "If the insured has other insurance against a loss covered by Part I of this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance."

The liability of the Protective Fire and Casualty Company to its insured while driving a nonowned automobile is determinable from the terms of its contract of insurance. The quoted provision of the insurance contract plainly states that such liability is limited to lia-

bility over and above other valid and collectible insurance. The liability of the Protective Fire and Casualty Company in the instant case is therefore the excess liability over and above that of the Empire Fire and Marine Insurance Company within the financial limits of its policy.

Under the law declared by this opinion the issue was cne of law and not of fact. The findings of fact made by the trial court were immaterial to the issue and are not therefore within the rule that findings of fact by the court in a law action have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong.

Pursuant to the prayer of the petition we hold as follows: The insurance policy of the Empire Fire and Marine Insurance Company covered the operation of the Swartzman automobile at the time and place of the accident. The Empire Fire and Marine Insurance Company is obligated to defend all claims based upon the negligence of Glenda Cornelius and Jerry Van Hoozer. The Empire Fire and Marine Insurance Company is primarily obligated to pay any judgment that may be rendered against Swartzman, Cornelius, or Van Hoozer for their negligence, to the extent of its policy limits. The insurance liability of Protective Fire and Casualty Company is excess over and above the coverage of Empire Fire and Marine Insurance Company within the financial limits of the Protective Fire and Casualty Company's policy with Cornelius in accordance with its provisions.

For the reasons stated the judgment is reversed and the cause remanded with directions to the district court to enter a declaratory judgment in accordance with the views expressed in this opinion. The costs of this appeal are taxed to the Empire Fire and Marine Insurance Company.

REVERSED AND REMANDED WITH DIRECTIONS.