RAYMOND D. BOREN, APPELLEE, V. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, A CORPORATION, ET AL., APPELLEES, UNIVERSAL UNDERWRITERS INSURANCE COMPANY, A CORPORATION, APPELLANT.

406 N.W.2d 640

Filed May 29, 1987.    No. 85-720.

Thom K. Cope of Bailey, Polsky, Cada, Todd & Cope, and, on brief, Stanley F. Wilson, for appellant.

Patrick W. Healey of Healey, Wieland, Kluender, Atwood & Jacobs, for appellee State Farm.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

Plaintiff-appellee, Raymond D. Boren, brought this action pursuant to the provisions of Neb. Rev. Stat. §§ 25-21,149 through 25-21,164 (Reissue 1985) for a declaration as to whether defendant-appellant, Universal Underwriters Insurance Company, a corporation, or defendant-appellee State Farm Mutual Automobile Insurance Company, a corporation, was obligated to pay a $2,092.23 judgment he obtained against defendant-appellee Julianne H. Byram and her father, defendant-appellee Harold E. Byram. In seeking a reversal of the judgment declaring Universal to be the primary insurer and State Farm to provide only excess insurance, Universal assigns two errors: (1) the ruling that Universal was barred by reason of the position it had taken prior to litigation from denying coverage; and (2) the finding that the Universal policy provided coverage for the accident giving rise to Boren's judgment. We affirm.

On April 13, 1983, Thomas, Patrick, and Cynthia Herrick assigned their certificate of title to a 1980 Ford Pinto automobile to Misle Chevrolet Company, a corporation engaged in the business of, among other things, the selling of new and used automobiles. Misle sold the Pinto to Harold E. Byram and his wife, Janet, on July 9, 1983. The Byrams gave Misle a check for the purchase price and took possession of the Pinto on the same day. While Misle gave the Byrams a copy of the purchase agreement, it did not execute the "reassignment by licensed dealer" on the certificate of title to the Pinto, nor did it deliver the duly assigned certificate of title to the Byrams until July 15, 1983. Although not clear from the record, it appears that Misle wanted to hold on to the certificate of title until the Byrams' check had been paid by the bank.

While driving the Pinto on July 14, 1983, the Byrams' daughter was involved in an accident with Boren. On that day, Universal had in force a policy providing garage operations and automobile hazard coverages to Misle, and State Farm had in force three separate policies providing automobile liability coverages to the Byrams and their daughter. None of the State Farm policies, however, described the Pinto as the owned automobile to which the policy applies. The limit of liability under the Universal policy is more than sufficient to cover Boren's judgment, as is true of the limit of State Farm's liability under any one of its policies.

The first assignment of error questions the correctness of the trial court's factual finding that, prior to litigation, Universal rested its denial of liability on grounds other than a claim that its policy provided no coverage for the subject occurrence, and the trial court's legal conclusion that, as a consequence, Universal could not now deny that its policy provided coverage.

Our analysis must necessarily begin by determining the scope of our review. Whether a declaratory judgment action is treated as an action at law or one in equity is to be determined by the nature of the dispute. See, *State Farm Mut. Auto. Ins. Co. v. Royal Ins. Co.*, 222 Neb. 13, 382 N.W.2d 2 (1986); *Occidental S. & L. v. Bell Fed. Credit Union*, 218 Neb. 519, 357 N.W.2d 198 (1984). Since no equitable relief is sought, the action is to be treated as one at law. As a consequence, a jury having been

waived, the factual finding of the trial court has the effect of a finding made by a jury and will not be set aside unless clearly wrong. See, *InterSystems, Inc. v. Farmers Co-op Exch., ante* p. 497, 406 N.W.2d 344 (1987); *State Farm Mut. Auto. Ins. Co. v. Royal Ins. Co., supra; Occidental S. & L. v. Bell Fed. Credit Union, supra.*

State Farm adduced evidence that prior to this suit's being filed, attorney John E. Beltzer, who is associated with the law firm appearing for Universal in this case and which represented the interests of Julianne and Harold Byram in the underlying tort action resulting in the money judgment in favor of Boren, wrote a letter to attorney Richard D. Sievers, who is associated with the firm representing Boren in the underlying tort action and in this suit. That letter, a copy of which was sent to Universal and to attorney Patrick W. Healey, who is associated with the firm representing State Farm's interests in this case, recognized that if Universal were to question whether its policy provided coverage, Beltzer would have a conflict of interest, in which case he would withdraw; if, however, Universal would consent "to not argue that issue," Beltzer would then continue acting in "Universal's defense." The letter then offers an analysis of various provisions of the Universal and State Farm policies and concludes that the best construction from Universal's point of view would render Universal's coverage excess, and the worst construction from its point of view would render both the Universal and State Farm coverages primary, obligating the two companies to share the loss. There is no claim that Beltzer and his firm withdrew from the representation of Julianne and Harold Byram in the underlying tort action. Neither is there any showing that the defense Universal provided Julianne and Harold Byram through Beltzer and his firm was under an agreement whereby Universal reserved whatever policy defenses might operate to relieve it of liability for any judgment Boren might recover. Indeed, so far as the record shows, the first time Universal denied liability for Boren's judgment was when it answered interrogatories in garnishment in the underlying tort action. (Unbelievably enough, this was done through the very same firm of attorneys which had defended Julianne and Harold Byram in the

underlying tort action.)

Under the circumstances, it cannot be said the trial court was clearly wrong in finding that Universal did not assert a lack of coverage as a ground for refusing to pay the judgment Boren obtained in the underlying tort action. The denial of coverage which came after Boren obtained his judgment against Julianne and Harold Byram came too late. See *National Union Fire Ins. Co. v. Bruecks,* 179 Neb. 642, 139 N.W.2d 821 (1966), concerning the effect of counsel's role in the matter.

Once the trial court's factual finding is determined to not be clearly wrong, the controlling rule of law is that an insurer which gives one reason for its conduct and decision as to a matter in controversy cannot, after litigation has begun, defend upon another and different ground. *Mutual Benefit Life Ins. Co. v. Chisholm,* 213 Neb. 301, 329 N.W.2d 103 (1983). Julianne and Harold Byram were entitled to the full protection of the Universal policy. Thus, the trial court's legal conclusion that Universal is barred from asserting that Julianne and Harold Byram were not "insureds," as defined in its policy, and thus not covered is correct.

That being so, we do not reach the second assignment of error and need only determine to what extent, if any, Universal and State Farm become liable under the terms of their respective policies to pay the money judgment Boren obtained against Julianne and Harold Byram.

Since the Byrams had not yet received a duly executed reassignment of the certificate of title to the Pinto, Misle was the owner of the automobile at the time of the accident giving rise to Boren's money judgment. *State Farm Mut. Auto. Ins. Co. v. Royal Ins. Co.,* 222 Neb. 13, 382 N.W.2d 2 (1986); *State Farm Mut. Auto. Ins. Co. v. Fitzgerald,* 214 Neb. 226, 334 N.W.2d 168 (1983); Neb. Rev. Stat. § 60-105(1) (Reissue 1984). The State Farm policies read that under such a circumstance the coverages provided are "excess" but do not apply at all if the nonowned automobile is "OWNED BY ANY **PERSON** OR ORGANIZATION IN A **CAR BUSINESS**" and there exists "OTHER LIABILITY COVERAGE WHICH APPLIES IN WHOLE OR IN PART AS PRIMARY, EXCESS OR CONTINGENT COVERAGE." The definition of "car

business" includes a business whose purpose is to sell land motor vehicles. Thus, the language of the State Farm policies specifically excludes coverage if there is other insurance. However, in its answer State Farm prays that it be declared to provide only excess coverage. Consequently, we ignore the exclusionary language and read the State Farm policies as containing excess coverage clauses. The Universal policy reads that the "insurance afforded by" its garage operation and automobile hazard coverage "is primary," except in circumstances not involved in this controversy.

We have been required on a number of past occasions to resolve controversies arising because each of the applicable policies contained mutually repugnant language intended to restrict or escape liability for a particular risk in the event there exists other insurance. Where such conflict has existed, we have held the owner's policy to provide primary coverage and the driver's policy to provide excess coverage. E.g., *Jensen v. Universal Underwriters Ins. Co.*, 208 Neb. 487, 304 N.W.2d 51 (1981); *Bituminous Cas. Corp. v. Andersen*, 184 Neb. 670, 171 N.W.2d 175 (1969); *Farm Bureau Ins. Co. v. Allied Mut. Ins. Co.*, 180 Neb. 555, 143 N.W.2d 923 (1966); *Protective Fire & Cas. Co. v. Cornelius*, 176 Neb. 75, 125 N.W.2d 179 (1963); *Turpin v. Standard Reliance Ins. Co.*, 169 Neb. 233, 99 N.W.2d 26 (1959).

In this case there is no conflict in the language of the applicable policies. The owner's policy says it is primary, and the driver's policy says it is excess. Absent ambiguities, language in a policy of insurance is to be given its plain and ordinary meaning. *State Farm Mut. Auto. Ins. Co. v. Royal Ins. Co., supra; Roth v. Farmers Mut. Ins. Co.*, 220 Neb. 612, 371 N.W.2d 289 (1985); *Kracl v. Aetna Cas. & Surety Co.*, 220 Neb. 869, 374 N.W.2d 40 (1985); *Charley v. Farmers Mut. Ins. Co.*, 219 Neb. 765, 366 N.W.2d 417 (1985); Wojcik, *Tracing the Fibers of Asbestos Litigation: When Do An Insurer's Duties of Defense and Indemnity Arise?*, 36 Fed'n Ins. & Corp. Couns. Q. 283 (1986). It necessarily follows, therefore, that the trial court's judgment declaring the obligations of the parties is correct and must be affirmed.

AFFIRMED.